IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELLIOT K. ANDERSON, | : | |
| Petitioner | : | CIVIL NO. 1:12-CV-0156 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WARDEN BLEDSOE, | : | |
| Respondent | : | |
| | : | |

## **MEMORANDUM**

April 24, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On January 26, 2012, Petitioner Elliot Anderson ("Petitioner" or "Anderson"), a federal inmate presently confined at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. He alleges that his right to due process was violated during the course of disciplinary proceedings that occurred while he was in the custody of the Federal Bureau of Prisons ("BOP"). On the same date, Anderson filed two other § 2241 habeas petitions raising similar claims with respect to disciplinary proceedings arising out of other incidents that occurred while he was in BOP custody. Those petitions were docketed at Civil Nos. 1:12-CV-0155 and 1:12-CV-0157. Anderson paid the required $5.00 filing fee in each of the three cases.

By Order dated January 31, 2012 entered in each of the three cases, Respondent was directed to show cause on or before February 21, 2012 why Petitioner should not be granted habeas corpus relief.  (Doc. 4.)  On February 21, 2012, Respondent filed a Motion for a More Definite Statement and for a Stay of the Court's Show Cause Order pending further order of court in each of the three cases.  (Doc. 7.)  Specifically, Respondent observed that Anderson did not provide incident report numbers for the incidents he referred to in each of his petitions, and the dates he listed as having had DHO hearings did not correspond with his discipline record, and thus it was necessary for Petitioner to amend his petition to include this information in order to enable Respondent to formulate a response to each of the petitions.  (*See* Doc. 8.)  By Memorandum and Order dated February 27, 2012, Respondent's Motion was granted, and Anderson was directed to file an amended petition in each of the three cases on or before March 19, 2012.  (Doc. 9.)

On March 5, 2012, Anderson filed an identical document in each of his three cases entitled "Petitioner's Amended Statement with Attachments."  (*See* Civil No. 1:12-CV-0155, 0156, 0157, Doc. 10.)  Upon review of his Amended Petition, it was apparent to the Court that Anderson makes claims with respect to disciplinary proceedings stemming from three (3) separate incident reports, and thus we determined that he had properly filed three (3) separate actions and that each case

2

should remain open and be litigated separately.  In our Order dated March 6, 2012 directing Respondent to file an answer to the Amended Petition in each of the three (3) cases, we organized Anderson's claims as follows:

> **Petition A: Civil No. 1:12-CV-0155**- Claims relating to Incident Report #2183350 (*see* Doc. 10 at 2-3);
>
> **Petition B: Civil No. 1:12-CV-0156**- Claims relating to Incident Report #2182608 (*see id.* at 4-5);
>
> **Petition C: Civil No. 1:12-CV-0157**- Claims relating to Incident Report #2148387 (*see id.* at 5-7).

(*See* Doc. 11 at 2.)

On March 27, 2012, Respondent filed a Response to the Petition in the instant action relating to Incident Report #2182608.  (Doc. 12.)  Although our March 6 Order provided that Anderson could file a reply brief within fourteen (14) days from the date of Respondent's filing, but no later than April 10, 2012, no reply brief has been filed.  Accordingly, the Amended Petition is ripe for disposition.  For the reasons set forth below, the Amended Petition will be denied.

## I.     FACTUAL BACKGROUND

### A.     Sentencing Information

Anderson is serving a 210 month term of imprisonment imposed on February 13, 2003 by the United States District Court for the Middle District of Florida for

firearm related charges.  (Doc. 12-1 at 1, Romano Decl., ¶ 2.)[1]  As of Mach 7, 2012, Anderson's projected release date was October 12, 2018, via good conduct time release.  (*Id.*)

### B.  Facts Relating to Incident Report #2182608

On July 6, 2011, while Anderson was confined at USP Lewisburg, after an officer ordered Anderson to submit to hand restraints and be escorted back to the Special Housing Unit ("SHU"), Anderson stated, "Fuck you Lieutenant, I ain't gonna go back to SHU.  And I ain't gonna take a cellie."  (Doc. 12-1 at 30, 7/6/11 Incident Report.)  The officer then gave Anderson another order to submit to hand restraints and he replied, "Fuck you asshole come in and get me."  (*Id.*)  Anderson was issued Incident Report #2182608 that same day charging him with Refusing a Program Assignment, in violation of Code 306, Insolence Towards a Staff Member, in violation of Code 312, and Refusing to Obey an Order of a Staff Member, in violation of Code 307.  (*Id.*)

On July 12, 2011, Anderson was provided with a Notice of Discipline Hearing before the DHO and Inmate Rights at Discipline Hearing Form.  (*Id.* at 37, 38.)  The Unit Discipline Committee ("UDC") referred the charge to the DHO for further

---

[1]Throughout this Memorandum, all citations to page numbers of documents filed to the docket in this action are to the page numbers generated by the CM/ECF System.

hearing.  (*Id.* at 30.)

On July 18, 2011, Anderson was provided with a hearing in front of the DHO. (*Id.* at 32, DHO Report, § I. B.)  Anderson was advised of his rights by Counselor T. Newcomb on July 12, 2011, as reflected by the Inmate Rights at Discipline Hearing Form attached to the DHO Report (*id.* at 38), and as noted in the DHO Report (*id.* at 32 § I. C).  As reflected by the DHO Report, at the outset of the hearing, Anderson was advised of his rights before the DHO, including as to his request for staff representation and waiver of witnesses, and indicated he understood them.  (*Id.* at 33 § III. B.)  Anderson also was given the opportunity to provide a statement, which he chose to do.  (*Id.*)  He stated: "I never refused a celly.  I never cussed him out.  It's retaliation."  (*Id.*)  The DHO Report further states as follows:

> After making the above aforementioned statement ANDERSON became highly tempered, verbally hostile, and stated in part 'You have a miserable life!  It doesn't matter what anyone says you're going to find him guilty!  Get me out of here I'm done!'  ANDERSON stood and was escorted from the hearing room.

(*Id.*)

It was noted at the hearing that, as indicated on the Notice of Discipline Hearing before the DHO (*id.* at 37), Anderson elected staff representation and did not elect witness testimony.  (*Id.* at 32 § II; at 33 § III C.)  The DHO Report reflects that Counselor F. Gambone appeared on Anderson's behalf and that Gambone noted no

5

discrepancies in the discipline process and was disclosed all documentation in reference to the case.  (*Id.* at 32 § II. B, E.)  Gambone also stated that he met with Anderson in advance of the hearing to discuss the case and had no comment for the record.  (*Id.* § II. E.)  The DHO Report also reflects that while a procedural issue was cited with respect to Anderson's contention that the UDC hearing was untimely, documentary evidence was not provided for consideration.  (*Id.* at 33 § III. B.)

Following the hearing, the DHO determined based upon the greater weight of the evidence that Anderson committed the prohibited act of Insolence Towards a Staff Member, in violation of Code 312, and Refusing to Obey an Order of a Staff Member, in violation of Code 307.  (*Id.* at 34 §§ IV, V.)  The charge of Refusing a Program Assignment, in violation of Code 306, was expunged because the elements of Anderson's actions most satisfied that of Code 312 and Code 307.  (*Id.* § V.)  The DHO provided an explanation of the specific evidence relied on in support of this determination, including the eyewitness account of the reporting staff member, as reflected in the incident report.  (*Id.*)  The DHO also stated that he considered and afforded little weight to Anderson's plea, "I never refused a celly.  I never cussed him out.  It's retaliation."  (*Id.*)  The DHO found that this plea failed to exculpate Anderson of the charge.  (*Id.*)  In addition, the DHO observed that Anderson's plea failed to address whether he refused to submit to restraints.  (*Id.*)  With respect to

Anderson's testimony that he "never cussed him out," the DHO afforded "greater weight to the reporting staff member as he derives no known benefit by providing false information and has a legal obligation to present accurate and factual information." (*Id.*)

The DHO sanctioned Anderson for the Code 307 violation with the disallowance of ten (10) days of good conduct time; the forfeiture of thirty (30) days non-vested good conduct time; twenty-one (21) days of disciplinary segregation; the loss of telephone privileges for one (1) year; the loss of TRULINCS privileges for one (1) year; the loss of visiting privileges for one (1) year; and the loss of commissary privileges for one (1) year. (Doc. 12-1 at 35 § VI.)

The DHO sanctioned Anderson for the Code 312 violation with the disallowance of ten (10) days of good conduct time; the forfeiture of thirty (30) days of non-vested good conduct time; fifteen (15) days of disciplinary segregation; the loss of telephone privileges for one (1) year; the loss of TRULINCS privileges for one (1) year; the loss of visiting privileges for one (1) year; and the loss of commissary privileges for one (1) year. (*Id.*)

## II.   DISCUSSION

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or

property, without due process of law . . . ." Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time." *Robinson v. Warden*, 250 Fed. Appx. 462, 464 (3d Cir. 2007).

In *Wolff*, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73.

In particular, the Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. *Id.* at 563-71. The Court set forth the following five requirements of due process in a prison disciplinary proceeding: **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary

evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if

there is conflicting evidence, on the greater weight of the evidence.").[2]

In the instant case, it is apparent upon review of the record that Anderson was afforded each of the due process protections set forth in *Wolff* in connection with the disciplinary proceedings that form the basis for this action. Specifically, as set forth in the foregoing section, Anderson received the opportunity to appear before a DHO and in fact did so on July 18, 2011; he was provided with written notice of the charges against him in the incident report and notice of his DHO hearing, delivered on July 6 and July 12 respectively, which was more than twenty-four (24) hours before his disciplinary hearing occurred on July 18; he was afforded the opportunity to call witnesses and to present documentary evidence, and elected not to do so; Anderson was given the opportunity to have the assistance of a staff representative of his own choosing and elected to have Counselor Gambone serve in that capacity; and he was provided with a thorough written explanation of the DHO's decision, as well as the rationale for the decision.

It also is apparent that the DHO's decision was based on "the greater weight of the evidence" and that the DHO properly documented his findings and specific evidence relied on in reaching those findings as required by 28 C.F.R. § 541.8(h) (formerly 28 C.F.R. § 541.17(g)). In particular, the DHO relied upon the eyewitness account of the

---

[2]We note that the language contained in 28 C.F.R. § 541.8(f), which is part of the revision of the BOP's Inmate Discipline Program Regulations that became effective June 20, 2011, and thus was effective at the time of the DHO hearing at issue in this case, formerly was contained in 28 C.F.R. § 541.17(f).

reporting staff member, as reflected in the incident report, and afforded greater weight to the reporting staff member's version of events than Anderson's version because the reporting staff member "derives no known benefit by providing false information and has a legal obligation to present accurate and factual information." (*See* Doc. 12-1 at 34 § V.)

In his Amended Petition, Anderson alleges that the DHO overlooked the untimely UDC hearing and should not have considered the UDC's findings or recommendations; that the DHO imposed inappropriate sanctions; and that the DHO overlooked that Anderson had written complaints of staff misconduct against Counselor Gambone, his staff representative, and alleges that Gambone never spoke to him about the incident report or disciplinary proceedings resulting in a prejudice to his defense. (*See* Doc. 10 at 4-5.)

With respect to Anderson's assertion that the DHO overlooked the untimeliness of the UDC hearing, the DHO Report states that Anderson raised a peremptory challenge based upon the fact that the UDC hearing was conducted on the fourth work day following the date of the incident report. (Doc. 12-1 at 33 § III. B.) In his report, the DHO cites Program Statement ("P.S.") 5270.80, <u>Inmate Discipline and Special Housing Units</u>, which stated that "Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three workdays from the time staff became aware of the

11

inmates involvement in the incident. This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays." (*Id*.) The DHO indicated in his Report that he explained that this challenge alone was not a basis for dismissal of the charge, and specifically stated, "[t]he DHO does not believe this delay infringed upon the panoply of ANDERSON's due process rights, impede[d] his ability to defend himself against the charge, or prejudice[d] his defense. As all requirements of due process and agency procedure were substantially met or exceeded the hearing continued." (*Id.*)

We find no merit to Anderson's assertion that his right to due process was violated when his UDC hearing was held on the fourth work day rather than the third work day. First, we observe that the governing Program Statement at the time the incident occurred on July 6, 2011, P.S. 5270.80, did not *require* that a UDC hearing be held within three work days from the time staff became aware of an inmate's involvement in an incident, but instead provided that the UDC hearing *ordinarily* would be held within that time frame.[3] Thus, holding a UDC hearing one day beyond the ordinary time frame would not violate any regulation. Further, as noted by the DHO, a notation appears in the record on

---

[3]We note that, on July 8, 2011, just two (2) days after the incident that forms the basis for this action, P.S. 5270.80 was replaced with P.S. 5270.09, which reflects the revision of the BOP's Inmate Discipline Program Regulations that became effective June 20, 2011, including the new 8 C.F.R. § 541.7(c), which provides that "[t]he UDC will ordinarily review the incident report within **five work days** after it is issued, not counting the day it was issued, weekends, and holidays." 8 C.F.R. § 541.7(c) (emphasis added).

the Incident Report that the reason the UDC hearing was held on the fourth work day was because Anderson was in ambulatory restraints. (*See* Doc. 12-1 at 30, Part II, Box 19.) It would therefore appear that the hearing was delayed to avoid any prejudicial effect on Anderson as a result of his confinement to restraints. Based on the foregoing, the DHO's conclusion that the delay in holding the UDC hearing did not impede upon Anderson's due process rights, his ability to defend himself, or prejudice his defense is supported by the record.

Anderson also contends that the DHO imposed inappropriate sanctions. (*See* Doc. 10 at 4.) However, we find that the all of the sanctions that were imposed for violations of Codes 307 and 312 (the loss of vested and non-vested good conduct time, disciplinary segregation, and the loss of various privileges), were in line with BOP policy regarding sanctions available for 300-level offenses. *See* 28 C.F.R. § 541.3(b), Table 1 (formerly 28 C.F.R. § 541.13, Tables 3 and 4).

Finally, with respect to Anderson's contention that the DHO should have found that Counselor Gambone had a conflict of interest that would prevent him from representing Anderson at hearing, the record reflects that Anderson elected to have Gambone represent him on July 12, 2011 when he was provided with notice of the DHO hearing. (*See* Doc. 12-1 at 37, Notice of DHO Hearing.) To the extent that a conflict of interest allegedly arose between the time that Anderson elected to have Gambone

represent him and the date of the hearing, the record reflects that when Anderson was invited to make a statement at the outset of the hearing, he did mention any alleged conflict of interest by his staff representative. Accordingly, he cannot claim that the DHO violated his right to due process by failing to recognize a conflict of interest.

## III.  CONCLUSION

Because Anderson was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, he is not entitled to habeas relief, and the Amended Petition will be denied. An appropriate Order will enter on today's date.